DANIEL R. MCNUTT (SBN 7815)
MATTHEW C. WOLF (SBN 10801)
CARBAJAL & MCNUTT, LLP
625 South Eighth Street
Las Vegas, Nevada 89101
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@cmlawnv.com
mcw@cmlawnv.com
*Attorneys for Defendants Continental Incorporated, Inc.,
and Leapers, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ADRISH BANERJEE, an individual, and YAN HE, an individual, <br><br> Plaintiffs <br><br> vs. <br><br> CONTINENTAL INCORPORATED, INC., d/b/a CONTINENTAL ENTERPRISES, an Indiana Corporation, LEAPERS, INC., a Michigan Corporation, and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:16-cv-00669-JCM-VCF <br><br> **DEFENDANTS CONTINENTAL'S AND LEAPERS'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** |

Defendants Continental Incorporated, Inc. d/b/a Continental Enterprises ("Continental") and Leapers Inc. ("Leapers"), by counsel, hereby move this Court for an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

///

///

///

This Motion is made and based on the pleadings and papers on file herein, the Memorandum of Points and Authorities attached hereto, and any oral argument this Court may entertain at the time of hearing pursuant to Local Rule 78-2.

DATED April 13, 2016.

CARBAJAL & MCNUTT, LLP


*/s/ Matt Wolf*
DANIEL R. MCNUTT
MATTHEW C. WOLF
625 South Eighth Street
Las Vegas, Nevada 89101

*Attorneys for Defendants Continental Incorporated, Inc., and Leapers, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION.

Plaintiffs have alleged several claims against Leapers and Continental arising from their arrests.  Having failed to establish the required elements of their claims, Plaintiffs' complaint cannot withstand this motion to dismiss.

## II.      BACKGROUND.[1]

Leapers is in the business of supplying hunting and shooting products, including rifle scopes. [ECF No. 1, Compl. at pg. 15, ¶ 10.]  Leapers claims intellectual property rights in the trade dress design of these rifle scopes.  [*Id.* at 15, ¶ 15.]  Leapers hired Continental, a private investigation firm located in Indianapolis, Indiana, to assist in investigating unauthorized third-party uses of its intellectual property.  [*Id.* at 15, ¶¶ 13-15.]  During this investigation, Leapers and Continental gathered evidence that Plaintiffs were manufacturing and selling rifle scopes bearing Leaper's

---

[1]       These facts are as pled in the Complaint.  Neither Leapers nor Continental concede the truth of these facts, in whole or in part, notwithstanding this treatment herein as true for purposes of Federal Rule of Civil Procedure 12(b)(6) analysis.

intellectual property under the trade name SNIPER. [*Id.* at 15, ¶¶ 15-16.] Continental purchased several rifle scopes bearing the SNIPER mark for examination. [*Id.* at 16, ¶¶ 19-21.] The purchased scopes were evaluated at the Vanderburgh County Sheriff's Office, and it was determined that the scopes did in fact bear Leapers's intellectual property. [*Id.* at 16-17, ¶ 21.]

After making this independent determination, the Vanderburgh County Sheriff's Office produced an affidavit showing probable cause existed to arrest Plaintiffs for unauthorized use of Leapers's intellectual property. [*Id.* at 17, ¶¶ 22, 24.] After reviewing the probable cause affidavit, the Vanderburgh Superior Court in Indiana issued a warrant on or about December 5, 2014 for Plaintiffs' arrests. [*Id.* at 17, ¶ 24.] Plaintiffs were arrested in Las Vegas on or about February 14, 2015, and posted bond of $10,000 each approximately one week later. [*Id.* at 18, ¶ 27.] Plaintiffs were then extradited to Indiana in May 2015 and, after a few hours, were released on recognizance. [*Id.* at p. 19, ¶ ¶ 29-33.] In August 2015, the Vanderburgh County Prosecutor's Office dismissed the charges against Plaintiffs. [*Id.* at 35, ¶ 35.]

Plaintiffs filed their complaint against Continental, Leapers, and Does 1-10 in Clark County District Court of the State of Nevada on February 24, 2016. [*Id.* at 2, ¶ 1.] Continental and Leapers removed the case to this Court on March 28, 2016 pursuant to both federal question and diversity jurisdiction. [*Id.* at 1.]

### III.    ARGUMENT.

**A.    Legal Standard.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is designed to test the sufficiency of the complaint. *Hansen v. Fed. Nat. Mortg. Ass'n*, 2013 WL 1340002, *1 (D. Nev. Apr. 1, 2013) (citing *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983)). To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face"

when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere *possibility* of liability is insufficient. *Id.* Even when presumed to be true, factual allegations are insufficient when they are "*merely consistent with* a defendant's liability," [*id.* (emphasis added)], or are subject to an "obvious alternative explanation." *Id.* at 682.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 678-79 (internal citations and quotations omitted). A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

**B.   Plaintiffs do not establish that Leapers or Continental, as "State Actors", Violated Plaintiffs' constitutional rights and, therefore, fail to state a claim for which relief can be granted under 42 U.S.C. § 1983.**

Plaintiffs have brought a Section 1983 claim against Leapers and Continental that is based on their alleged actions related to Plaintiffs' arrests. However, Plaintiffs have failed to plausibly allege the requisite elements of such a claim and, therefore, cannot overcome this motion to dismiss.

Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To establish a § 1983 claim, a plaintiff must allege: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." *Johnson v. Gibbons*, 2010 WL 4255430, *1 (D. Nev. Oct. 8, 2010) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**1.   *Plaintiffs do not plausibly allege Leapers and Continental were State Actors.***

1    Plaintiffs have alleged no conduct by Leapers or Continental that would constitute state

2    action.  *See Simmons v. Sacramento Cty. Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003)

3    (private parties do not generally act under color of state law for Section 1983 purposes, and

4    conclusory allegations that a private party conspired with a state actor to deprive a plaintiff of

5    constitutional rights are insufficient to state a claim); *see also Naples v. Stefanelli*, 972 F. Supp. 2d

6    373, 391 (E.D.N.Y. 2013) ("Only in limited circumstances will courts recognize that a private

7    individual may be subject to liability under Section 1983.").

8    The Ninth Circuit recognizes three tests to determine if a private party acted under color of

9    state law:  (1) the joint action test, (2) the symbiotic relationship test, and (3) the public function test.

10   *Brunette v. Humane Society of Ventura Cty.*, 294 F.3d 1205, 1210 (9th Cir. 2002).  The joint action

11   test requires that a private party's actions be "inextricably intertwined" with the state's actions.

12   *Trzaska v. Int'l Game Tech.*, 2011 WL 2516931, *3 (D. Nev. June 23, 2011).  A conspiracy between

13   the private party and the state can satisfy this test "if there is '(1) an agreement between a state actor

14   and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done

15   in furtherance of that goal causing damages."  *Id.* (quoting *Ciambrello v. Cty. of Nassau*, 292 F.3d

16   307, 324 (2d Cir. 2002)).  Additionally, "the private actor needs to have some control over the state

17   actors' decision making."  *Id.* (citing *Arnold v. IBM Corp.*, 637 F.2d 1350, 1357 (9th Cir. 1981)).[2]

18

19   [2]    The allegations in Plaintiffs' complaint seem to focus on this joint action test.  [*See, e.g.,* ECF
20   No. 1 at 21, ¶ 40 (alleging that Leapers and Continental "conspired" or "acted in concert with" the
     state).]  The symbiotic relationship test requires that the government "so far insinuated itself into a
21   position of interdependence [with a private entity] that it must be recognized as a joint participant in
     the challenged activity."  *Trzaska*, 2011 WL 2516931 (quoting *Burton v. Wilmington Parking
22   Authority*, 365 U.S. 715, 725 (1961)).  Plaintiffs have not alleged any activity that would rise to a
     level that would be considered a "position of interdependence."  *See id.* (providing information to the
23   police does not rise to level of "interdependence").  The public function test requires that the private
     action be "traditionally considered to be the 'exclusive prerogative' of the state."  *Id.*  Plaintiffs
24   likewise do not allege that Leaper's or Continental's actions are traditionally considered to be the
     exclusive prerogative of the state.  Plaintiff's allegations do not satisfy the public function test
25   because "[p]roviding information to the police cannot be considered to be a function of the state,
     much less the 'exclusive prerogative' of the state."  *Id.*

1

2

Here, Plaintiffs allege:

At all times pertinent hereto, Defendants Leapers and Continental were state actors because they actively conspired and/or acted in concert with federal and/or state law enforcement agents and officials and one another, and, as a result, deprived Plaintiffs of rights protected by the United States Constitution.

3

4

[ECF No. 1 at 20, ¶ 38.]   This alleged "conspiracy" is solely based on the further allegation that

5

"Defendants Leapers' and Continental's bogus 'investigation' and knowingly false representations

6

were the foundation of the probable cause affidavit and Plaintiffs' arrest. . . ."   [*Id.* at 21, ¶40.]

7

However, "the mere furnishing of information to police officers does not constitute joint action under

8

color of state law which renders a private citizen liable under § 1983[,]" even if that information

9

provided is false.  *Lockhead v. Weinstein*, 24 Fed. Appx. 805, 806 (9th Cir. 2001); *see also Radcliffe*

10

*Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001) ("[A] relationship of cause and effect between the

11

complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor

12

would find himself in a conspiracy."); *Schneider v. City of Redmond*, 2007 WL 915176, *3 (D.

13

Oregon Mar. 23, 2007) ("[P]roviding false information to an arresting officer is not, by itself,

14

sufficient to state a claim against that private party under section 1983.") (citation omitted).

15

Plaintiffs do not allege that Leapers, Continental, and the Vanderburgh County Sheriff's

16

Office had an agreement to "inflict an unconstitutional injury" on Plaintiffs and do not allege that

17

Leapers or Continental had any control over the Office's actions.  [*See generally* ECF No. 1 at 20-21,

18

¶¶ 37-45.]   Rather, they offer conclusory allegations in support of a "conspiracy" or "concerted

19

action" and simply allege that Leapers and Continental offered allegedly false information that led to

20

the arrest of Plaintiffs.  *See, e.g., Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2009)

21

(dismissing § 1983 claim where plaintiff failed to allege "that state officials knew that the police

22

reports were based on false information, or facts from which it could be inferred that such state

23

officials conspired with defendants").   Thus, Leapers's and Continental's acts in providing the

24

Vanderburgh County Sheriff's Office with information, even if the information was false and was

25

relied upon in making the decision to arrest Plaintiffs, does not constitute "state action."

Plaintiffs further allege that "Defendants Leapers and Continental . . . coordinated and facilitated Plaintiffs' arrest[] by communicating information about Plaintiffs' whereabouts to the Vanderburgh County Sheriff's Office and/or other federal or state agencies." [ECF No. 1 at 21, ¶ 42.] This allegation simply supports that Leapers and/or Continental, again, merely provided information to the Sheriff's Office. *See Faust v. Walt Disney Co.*, 2000 WL 635454, *4 (N.D. Cal. May 2, 2000) (mere cooperation with the police "does not prove a conspiracy to violate a litigant's civil rights"). Plaintiffs do not allege that Leapers or Continental physically arrested or attempted to restrain Plaintiffs or that Leapers or Continental directed the police to arrest Plaintiffs.  As such, Leapers's and Continental's alleged cooperative actions with the Sheriff's Office do not rise to the level of state action.

Plaintiffs have not plausibly alleged that Leapers or Continental acted "under color of state law."  As such, their Section 1983 claim should be dismissed in its entirety.

**2.**     *Plaintiffs fail to allege a violation of Eighth and Fourteenth Amendment rights.*

In the event this Court concludes that Plaintiffs did plausibly allege that Leapers and/or Continental acted as a "state actor", Plaintiffs must also plausibly allege a violation of their constitutional rights.  In that respect, Plaintiffs allege that they were "deprived of their rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution." [ECF No. 1 at 21, ¶ 44.]  However, Plaintiffs have failed to adequately plead a deprivation of any Eighth and Fourteenth Amendment rights.

The Eighth Amendment protects persons from excessive bail, excessive fines, and cruel and unusual punishment.  U.S. Const. Amend. VIII.  "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n. 4 (1977)); *see De Groff v. Las Vegas Metro. Police Dept.*, 2013 WL 4833494, *1 (D. Nev. Sept. 9, 2013) (dismissing plaintiff's § 1983 claim that

1   was based on actions while he was handcuffed and before any formal adjudication of guilt);

2   *Hammerlord v. Filner*, 2013 WL 4046676, *5 (S.D. Cal. Aug. 9, 2013) ("As there is no allegation

3   that Plaintiff has been found guilty of anything, Plaintiff's claim that he has been deprived of his

4   Eighth Amendment rights must fail.").   Here, Plaintiffs were never convicted of the crimes with

5   which they were charged.  [ECF No. 1 at 20, ¶ 35.]  As such, they have not plausibly alleged that they

6   were entitled to Eighth Amendment protection.  *See Atwood v. Schriro*, 489 F. Supp. 2d 982, 1050

7   (D. Ariz. 2007) ("[T]he protection afforded by the Eighth Amendment does not attach until a person

8   is convicted and subject to punishment by the state.").[3]

9        The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or

10  property, without due process of law."  U.S. Const. XIV.  Plaintiffs simply assert that "[a]s a direct

11  and proximate result of Defendants Leapers' and Continentals' actions, Plaintiffs were harmed and

12  deprived of their rights under the . . . Fourteenth Amendment[] of the United States Constitution."

13  [ECF No. 1 at 21, ¶ 44.]   Plaintiffs do not, however, allege what Fourteenth Amendment rights

14  Leapers and Continental allegedly violated.   Rather, each allegation contained within Plaintiffs'

15  Section 1983 count references conduct leading to Plaintiffs' alleged "unlawful" arrests.  [*See id.* at

16  21.]  Plaintiffs' reliance on the Fourteenth Amendment for this claim is improper.

17        In *Gunter v. Meeks*, this Court dismissed a civil rights action wherein the plaintiff claimed that

18  his arrest and prosecution without probable cause deprived him of his constitutional right to liberty in

19  violation of the Fourteenth Amendment's due process clause.  2013 WL 5493270, *3 (D. Nev. Sept.

20

---

[3]     Plaintiff Adrish Banerjee alleges that, "[d]uring his incarceration, he was not given insulin and
21  was administered the wrong medications . . ."  He also alleges that, as a result, he had to be
    resuscitated, was "treated for a swollen brain and heart and lung failure", and underwent surgery, "all
22  while being shackled to his bed and guarded by law enforcement officials."  Plaintiff Yan He alleges
    that she traveled from Las Vegas to Indiana by van, "without respite or release to any lodging."
23  However, these circumstances occurred prior to any formal adjudication and, therefore, do not
    support that Plaintiffs were entitled to Eighth Amendment protection.  *See Banks v. NaphCare*, 2015
24  WL 4091246, *2 (D. Nev. July 6, 2015) ("The Eighth Amendment does not apply to pretrial
    detainees. . . .").

25

30, 2013).   The Court explained that it is the Fourth Amendment that establishes protections applicable to arrests, and, therefore, the plaintiff's reliance on the Fourteenth Amendment was misplaced.   *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 268 (1994) (refusing to recognize a substantive right under the Fourteenth Amendment's due process clause to be free from criminal prosecution except upon probable cause).   Thus, Plaintiffs have not properly alleged a deprivation of their Fourteenth Amendment rights.

In the event this Court finds Plaintiffs adequately pled that Leapers and Continental acted under color of state law, Plaintiffs still have not plausibly alleged a deprivation of their Eighth and Fourteenth Amendment rights, and, therefore, their claim (as to those rights specifically) should be dismissed.

**C.   Plaintiffs do not state a claim for abuse of process because they fail to allege the Leapers and Continental engaged in the improper use of process.**

An abuse of process claim is comprised of two elements:   "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding."   *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (citation omitted).[4]   "An ulterior purpose is any improper motive underlying the issuance of legal process."   *Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993).   In Nevada, "[t]he gist of the tort of abuse of process is . . . misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish."   *In re Black*, 487 B.R. 202, 212 (Bankr. 9th Cir. 2013) (citing *Laxalt v. McClatchy*, 622 F. Supp. 737, 751-52 (D. Nev. 1985)) (original emphasis).   "[A]n abuse of process claim 'hinges on the misuse of regularly issued process, in contrast to malicious prosecution which rests upon the wrongful issuance of process.'"   *Mirch v. Clifton*, 2015 WL 6681231, *1 (Nev. Oct. 29, 2015) (citation omitted).   "[T]here is 'no liability where the defendant has done nothing more

---

[4]      Nevada state law would apply to this claim because the "process" complained of, namely the arrests, occurred in Nevada.  *See Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 833-34 (9th Cir. 2006) (applying Nevada law in abuse of process case).

than carry out the process to its authorized conclusion, even though with bad intentions.'" *Ralphaelson v. Ashtonwood Stud Assoc., L.P.*, 2009 WL 2382765, *3 (D. Nev. July 31, 2009) (citing *Prosser on Torts*, Abuse of Process § 115, p. 877 (3d ed. 1964)).

Here, Plaintiffs' abuse of process claim is based upon their allegations that Leapers and Continental supplied false information to the police and orchestrated Plaintiffs' arrests. [ECF No. 1 at 22, ¶¶ 47-50.] This is not enough as Plaintiffs do not allege that *Leapers* and/or *Continental* themselves engaged in the improper use of a "process." *See, e.g., Gowin v. Altmiller*, 663 F.2d 820, 824 (9th Cir. 1981) (dismissing abuse of process claim where the defendants complained to the sheriff and testified during plaintiff's trial and explaining that there was no evidence of an improper act that was attributable to defendants). Rather, Plaintiffs state that it was a detective at the Vanderburgh County Sheriff's Office who attested to an affidavit of probable cause to support Plaintiffs' arrests [*id.* at 17, ¶ 22], it was the Vanderburgh Superior Court that issued a warrant for Plaintiffs' arrests [*id.* at 17, ¶ 24], and it was police officers in Las Vegas, Nevada who actually arrested Plaintiffs [*id.* at 18, ¶ 26]. Plaintiffs make no allegations that Leapers and Continental actually carried out the arrests or otherwise misused a regularly issued process. The Sheriff, the Prosecuting Attorney, the Court, and law enforcement officials in Nevada all acted independently, based upon their own evaluation of the evidence. Thus, Plaintiffs' complaint fails to plausibly allege the second element of an abuse of process claim.

**D.   Plaintiffs do not state a plausible false imprisonment claim.**

Under Nevada law, false imprisonment has been defined as "a restraint of liberty without any sufficient cause or legal authority." *Lerner Shops v. Marin*, 423 P.2d 398, 400 (Nev. 1967). A private party can only be held liable for false imprisonment if that party "instigated or effected an unlawful arrest." *Nau v. Sellman*, 757 P.2d 358, 360 (Nev. 1988). For example, in *Cerros v. North Las Vegas Police Dept.*, the District of Nevada dismissed an abuse of process claim where the complaint failed to allege that the defendant actually participated in the arrest or that he effected the

arrest.  2006 WL 3257164, *3 (D. Nev. Nov. 9, 2006).  Rather, the complaint simply alleged that the defendant accompanied the police during the arrest and conducted a search of the plaintiff's personal property.  *Id.*  The court held that those allegations were insufficient to state a plausible claim of false imprisonment against a private party.  *Id.*

The only facts alleged against Leapers and Continental in support of Plaintiffs' false imprisonment claim are that Leapers and Continental provided the Vanderburgh County Sheriff's Office "with false information and allegations" that was used "to form the basis of an affidavit of probable cause," "communicated extensively with Vanderburgh County, the Vanderburgh County Sheriff's Office and/or other government agents in order to effectuate the arrests of Plaintiffs," and "coordinated the arrest of Plaintiffs."  [ECF No. 1 at 23, ¶¶54-57.]  Not only do these allegations establish even less conduct than that of the complaint dismissed in *Cerros*, but, "[i]t is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them."  *Nau*, 757 P.2d at 360 (citing 1 R.2d (Torts) § 45(A), Comment c, p. 70); *see also Pitti v. Albertsons, LLC*, 2012 WL 1931243, *4 (D. Nev. May 29, 2012) (dismissing false imprisonment claim where there was no evidence that defendants actually physically held plaintiff).

Plaintiffs fail to allege any facts suggesting that Leapers or Continental commanded the Sheriff's Office to arrest them or that Leapers or Continental themselves detained Plaintiffs or actually participated in the arrests.  Rather, the only facts alleged show that Leapers and Continental provided information to the Sheriff's Office and cooperated in its investigation, and that the Sheriff's Office made the decision to arrest Plaintiffs by exercising its own judgment.  These acts do not rise to the level of "instigating" Plaintiffs' arrests.  As such, Plaintiffs have failed to establish a plausible false imprisonment claim against Leapers and Continental.

1

**E.      Plaintiffs' defamation claim fails because it is based upon privileged statements made to law enforcement**

2

**1.      Indiana law applies to Plaintiffs' defamation claim.**

3

4

5

6

7

8

Under Nevada choice-of-law principles, Section 145 of the Restatement (Second) of Conflict of Laws governs the choice-of-law issues in tort actions "unless another, more specific section of the Second Restatement applies to the particular tort."  *Gen. Motors Corp. v. Eighth Jud. Dist. Court of State of Nev.*, 134 P.3d 111, 116 (Nev. 2006).  Section 149 of the Second Restatement applies to defamation and provides that "the local law of the state where the publication occurs determines the rights and liabilities of the parties. . . ."  R.2d (Second) Conflict of Laws, § 149.

9

10

11

12

Here, Plaintiffs allege that "[t]he false and defamatory statements were published in the warrant of probable cause affidavit. . . ."  [ECF No. 1 at 25, ¶ 65.]  The probable cause affidavit was drafted and executed and the warrant was issued in Indiana.  [*Id.*16-17, ¶¶ 21-22, 24.]  As such, the publication occurred in Indiana, and it is Indiana's law with respect to defamation that applies.

13

**2.      Plaintiffs' defamation claim is insufficient.**

14

15

16

17

18

19

20

21

22

23

24

25

A defamation claim in Indiana requires four elements:  (1) the existence of a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages.  *Ali v. Alliance Home Health Care, LLC*, 2016 WL 1158610, *3 (Ind. Ct. App. Mar. 24, 2016) (quoting *Haegert v. McMullan*, 953 N.E.2d 1223, 1230 (Ind. Ct. App. 2011)).  A qualified privilege "applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty."  *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992) (citations omitted).  "[I]t is well established that in Indiana, communications made to law enforcement to report criminal activity are qualifiedly privileged."  *Kelley v. Tanoos*, 865 N.E.2d 593, 600 (Ind. 2007); *see Williams v. Tharp*, 914 N.E.2d 756, 765 (Ind. 2009) ("The better rule, it seems to us, is one that fosters open communication between citizens and law enforcement, leaving the task of investigating that information, and of deciding upon

the appropriate response, to trained professionals.").   To overcome the qualified privilege, it is the

plaintiff's burden to prove that the privilege was abused by showing that (1) the defendant was

primarily motivated by ill will in making the statement, (2) there was excessive publication of the

defamatory statements, or (3) the statement was made without belief or grounds for belief in its truth.

*Bals*, 600 N.E.2d at 1353 (citations omitted).

      In support of their defamation claim, Plaintiffs make the following allegations:

> 64.   From on or about September 2014, Defendants Leapers and Continental, themselves, and by and through its employee and agent, Mr. Wilson, intentionally and maliciously invaded Plaintiffs' reputation and good name by knowingly making false and defamatory statements to detectives of the Vanderburgh County Sheriff's Office used in a warrant of probable cause affidavit regarding Plaintiffs' alleged criminal conduct.

> 65.   The false and defamatory statements were published in the warrant of probable cause affidavit and ultimately caused, at Defendants Leapers' and Continental's fault, substantial emotional and reputational injury to Plaintiffs and their business.

[ECF No. 1 at 25, ¶¶ 64-65.]   However, these bald assertions, as well as similar conclusory

allegations throughout the Complaint, of Leapers's and Continental's alleged motive in making

particular statements to the Vanderburgh County Sheriff's Office are insufficient to plead the

inapplicability of the privilege.   *See Iqbal*, 556 U.S. at 678; *see also, e.g., Shine v. Loomis*, 836

N.E.2d 952, 959 (Ind. Ct. App. 2005) ("[T]he failure to investigate, and by implication, the

undertaking of less than thorough investigation, does not in itself establish malice.").

      More importantly, "[a] plaintiff who sues for defamation must set out the alleged defamatory

statement[s] in the complaint."   Specifically, the Indiana Supreme Court has stated:

> But even under notice pleading, a plaintiff must still set out the operative facts of the claim. Indeed hornbook law stresses the necessity of including the alleged defamatory statement in the complaint. There is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory. The defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses.

*Trail v. Boys & Girls Clubs of NW Ind.*, 845 N.E.2d 130, 136-37 (Ind. 2006) (citations omitted).

Here, Plaintiffs allege that Leapers, Continental, and Kyle Wilson made statements to the

1  Vanderburgh County Sheriff's Office regarding the counterfeit nature of Plaintiffs' rifle scopes.  [*See,*

2  *e.g.,* ECF No. 1 at 16, ¶ 21.]  They also allege that Leapers, Continental, and Kyle Wilson made false

3  statements regarding Leapers's trade dress rights.   [*Id.* at 17, ¶ 23.]   However, none of these

4  allegations identify who specifically made each statement, the substance of each statement, to whom

5  each statement was made, how many statements were made, and which statements were published in

6  the probable cause affidavit.  *See Ali*, 2016 WL 1158610, at *3 (finding plaintiff's allegations

7  insufficient where he did "not specifically identify the statements alleged to have been made by each

8  of the several named individuals"); *see also Cowgill v. Whitewater Pub.*, 2008 WL 2266367, *2 (S.D.

9  Ind. May 29, 2008) (dismissing defamation claim where plaintiff did not sufficiently allege facts

10  regarding the defamatory statements); *Perry v. Hartz Mountain Corp.*, 537 F. Supp. 1387, 1391 (S.D.

11  Ind. 1982) (same).  As such, Plaintiffs' complaint does not plausibly state a claim for defamation.

12  **F.    Plaintiffs' intentional infliction of emotional distress claim cannot survive a motion to dismiss because Plaintiffs do not allege "severe emotional distress".**

13  To plausibly state a claim for intentional infliction of emotional distress, the plaintiff must

14  allege: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for,

15  causing emotional distress; (2) the plaintiff has suffered severe or extreme emotional distress; and (3)

16  actual or proximate causation.   *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981)[5]; *see also*

17  *Ralphaelson*, 2009 WL 2382765, *4 ("In order to show intentional infliction of emotional distress,

18  'the plaintiff needs to show that there was extreme and outrageous conduct with either the intention

19  of, or reckless disregard for, causing emotional distress.") (quoting *State v. Eighth Jud. Dist. Court*,

20  42 P.3d 233, 241 (Nev. 2002)).  "[E]xtreme and outrageous conduct is that which is 'outside all

21

22  _____

23  [5]    The Court will likely apply Nevada law to this claim.  Nevada's choice of law analysis is based upon § 145 of the Restatement (Second) of Conflict of Laws and considers the following factors:  (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile of the parties; and (4) the place where the relationship, if any, between the parties is centered.  *Kohlrautz*, 441 F.3d at 833-34.  Additionally, Nevada applies a presumption in tort cases that Nevada law governs.  *Id.*  Because only one factor is in favor of application of Indiana law (where conduct causing injury occurred), it is Nevada law that likely applies.

24

25

possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted).  Plaintiffs do not adequately allege the first or second element of this claim.

In support of their claim, Plaintiffs allege that Leapers and Continental "intended to inflict severe emotional distress upon Plaintiffs" by "knowingly and maliciously accus[ing] Plaintiffs of crimes they did not commit."  [ECF No. 1 at 25, ¶ 68; *see also id.* at 25-26, ¶¶ 69-71.]  Plaintiffs' allegations of "extreme and outrageous conduct" boil down to Leapers and Continental intentionally providing false information to the Sheriff's Office.  Such conduct does not meet the stringent standard for "extreme and outrageous conduct," which requires conduct that is "outside all possible bounds of decency" and is regarded as "utterly intolerable in a civilized community."  In fact, this Court has dismissed intentional infliction of emotional distress claims based on allegations of conduct far more extreme than merely providing information to the police.  *See, e.g., Walls v. Las Vegas Metro. Police Dept.*, 2013 WL 1182095, *6-7 (D. Nev. Mar. 20, 2013) (holding that alleged physical conduct by officer during the plaintiff's arrest was not so outrageous to support an intentional infliction of emotional distress claim); *Blankenship v. Cox*, 2007 WL 844891, *2-3, 12 (D. Nev. Mar. 19, 2007) (dismissing intentional infliction of emotional distress claim that was based on alleged false arrest where conduct alleged was not extreme and outrageous).

As for the second element, Plaintiffs allege that "[a]s a result of Plaintiffs [sic] unlawful arrest, Plaintiffs experienced severe emotional distress, including substantial embarrassment, undeserved humiliation and fear."  [ECF No. 1 at 26, ¶ 74.]  This allegation is insufficient to support a facially plausible claim for intentional infliction of emotional distress because Plaintiffs do not allege any facts that support the claim that they have experienced what constitutes "severe emotional distress."  Specifically, Plaintiffs do not allege how their emotional trauma has manifested itself, do not allege that their distress affected their normal routine, and do not allege that they ever sought medical treatment for their distress.  *See, e.g., Walls*, 2013 WL 1182095, at *6-7 (dismissing

1  intentional infliction of emotional distress claim where plaintiff stated he sustained severe emotional

2  distress but did not provide any facts supporting that statement); *Pitti*, 2012 WL 1931243, *3

3  ("[G]eneral emotional discomfort, or even depression for a period of time following the event, is

4  insufficient to establish severe emotional distress, especially where no objectively verifiable indicia

5  of these alleged conditions exists.") (internal citations omitted); *Miller v. Jones*, 970 P.2d 571, 577

6  (Nev. 1998) (affirming summary judgment on intentional infliction of emotional distress claim where

7  plaintiff stated he was depressed, but "did not seek any medical or psychiatric assistance"); *Nelson v.*

8  *City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983) ("The less extreme the outrage, the more

9  appropriate it is to require evidence of physical injury or illness from the emotional distress.").

10  Plaintiffs' allegations of "embarrassment", "humiliation", and "fear" are simply insufficient to allege

11  the "severe emotional distress" required under Nevada law.

12          To the extent Plaintiffs intended that their allegations regarding their detention conditions and

13  the hospitalization of Plaintiff Banerjee provide support for their alleged "severe emotional distress",

14  such alleged harm was not caused by Leapers and/or Continental.  [*See, e.g.,* ECF No. 1 at 19, ¶ 32.][6]

15  Rather, Plaintiff Banerjee's hospitalization and related conditions, as well as Plaintiff He's travel

16  conditions, resulted directly from Plaintiffs' transport to and detention at the Las Vegas Detention

17  Center – of which Leapers and Continental had no part.  In fact, Plaintiffs do not allege that Leapers

18  or Continental had <u>any</u> contact with the Las Vegas Detention Center, let alone contact related to the

19  medical care and transportation to be provided to Plaintiffs.  Thus, any harm to Plaintiffs resulting

20  from those circumstances is too attenuated from Leapers's and/or Continental's alleged conduct

21  (specifically, providing information to the Vanderburgh County Sheriff's Office prior to Plaintiffs'

22  arrests) to support a claim of intentional infliction of emotional distress against Leapers or

23  _____

24  [6]          What is more, for Plaintiffs to assert that they did in fact intend to use such allegations as
   support for their intentional infliction of emotional distress claim would be baseless because the
   alleged harm resulting from their respective hospitalization and travel to the detention facility were

25  not physical injuries or bodily harm *arising from* their alleged emotional distress.

Continental.  *See Star*, 625 P.2d at 91-92 (listing causation as an element required to state a claim for intentional infliction of emotional distress).

As such, Plaintiffs have failed to state a plausible claim of intentional infliction of emotional distress against Leapers and Continental.

**G.      Plaintiffs' civil conspiracy claim cannot survive because Plaintiffs failed to allege an underlying tort with specificity.**

To state a claim for civil conspiracy, the plaintiff must show:  (1) defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff sustained damage as a result.  *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993).  "Civil conspiracy is not an independent cause of action – it must arise from some underlying wrong."  *Paul Steelman Ltd. v. HKS, Inc.*, 2007 WL 295610, *3 (D. Nev. Jan. 26, 2007); *see Nelson v. Willden*, 2015 WL 4937939, *4 (D. Nev. Aug. 19, 2015) ("In order to successfully allege civil conspiracy, a plaintiff must establish:  (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort.") (citing *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001)).  "Further, the plaintiff must establish with particular specificity that 'the manner in which a defendant joined in the conspiracy and how he participated in it."  *Id.* (quoting *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984)).  Here, Plaintiffs do not specifically allege an underlying tort or the manner in which Continental and Leapers each participated in the conspiracy.

The entirety of Plaintiffs' civil conspiracy claim is summarized by the following allegations:

76.      Defendants Leapers and Continental engaged in concerted action intended to accomplish the unlawful objective of damaging Plaintiffs' professional reputation, harming competitors and forcing Plaintiffs out of business.

77.      Defendants Leapers and Continental acted with knowledge of the unlawful objective and collectively agreed upon a course of action with the intent to injure Plaintiffs' reputation and business interests.  Specifically, Defendants Leapers and Continental conspired and schemed to intentionally injure competitors, such as Plaintiffs, by making "creative use" of Indiana statutes to employ "asymmetrical warfare" and "unconventional strategies and tactics" against Plaintiffs.

1
2

78.     Plaintiffs suffered damages as a result of the Defendants Leapers' and Continental's fraudulent, deceitful and wrongful conduct in an amount to be proven at trial.

3
4
5
6
7
8
9
10
11
12
13
14

[ECF No. 1 at 27, ¶¶ 76-78.]  The Plaintiffs do not allege with specificity any underlying tort – rather, they simply allege that Leapers and Continental acted with the intention of harming Plaintiffs and their business.  Leapers and Continental are not in a position to guess the tort or the specific acts upon which Plaintiffs are basing their civil conspiracy claim – and, in fact, they do not have to and neither does the Court.  *See, e.g., Taddeo v. Taddeo*, 2011 WL 4074433, *6 (D. Nev. Sept. 13, 2011) (dismissing civil conspiracy claim where plaintiffs do not "specifically identif[y] the underlying tort alleged).  Where factual allegations in support of the several elements constituting civil conspiracy are not specifically pled, it is "not the duty of the trial court or the appellate court to create a claim which [plaintiff] has not spelled out in his pleading."  *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1484 (9th Cir. 1984) (quoting *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 677-78 (5th Cir. 1961)).  As such, Plaintiffs' bald allegations do not adequately and plausibly state a claim for civil conspiracy.

15
16
17
18

Moreover, even if the Court finds that Plaintiffs have plausibly alleged a civil conspiracy claim that is based on one (or all) of the other tort claims set forth in the complaint, in the event that the Court dismisses those underlying tort claims, the Court must also dismiss the civil conspiracy claim as it cannot survive on its own.

19

**H.      Plaintiffs' do not plausibly allege a negligence claim against Continental.**

20
21
22

Under Nevada law, a claim for negligence must allege four elements:  (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause of plaintiff's injuries; and (4) plaintiff suffered damage.  *Scialabba v. Brandise Const. Co.*, 921 P.2d

23
24
25

1   928, 930 (Nev. 1996)[7].   The determination of whether the defendant owes a duty of care to the

2   plaintiff is a question of law.   *Id.*

3        Plaintiffs' negligence claim fails because they do not allege that Continental owed a duty of

4   care to the Plaintiffs.   Rather, they simply allege that Continental "had a duty to Plaintiffs to exercise

5   reasonable care in reporting to law enforcement only true and accurate information regarding them. . .

6   ."   [ECF No. 1 at 27, ¶ 81.]   Such a duty does not exist as it would deter private citizens and

7   investigators from coming forward and providing information regarding the commission of a

8   potential crime to the police.   *See, e.g., Copeland v. K Mart Corp.*, 1998 WL 560759, \*4 (9th Cir.

9   Sept. 2, 1998) (applying Oregon law) ("When a crime has been committed against a private citizen in

10  Oregon, that citizen cannot be held liable for damages due to negligence in reporting the crime or

11  instigating an arrest because the citizen owes no duty to investigate the circumstances.").   Thus,

12  because Plaintiffs have not alleged a duty that exists with respect to Continental's conduct in

13  providing information to the police, Plaintiffs' negligence claim must fail.

14       What is more, Plaintiffs base their negligence claim on alleged misrepresentations and false

15  statements made by Continental, as a "professional who specializes in investigating trademark and

16  intellectual property infringement," to the Vanderburgh County Sheriff's Office.   This cause of

17  action, therefore, is more appropriately a negligent misrepresentation claim rather than a negligence

18  claim.   *See, e.g., Leaf v. U.S.*, 661 F.2d 740, 742 (9th Cir. 1981) (noting that claim for "negligence"

19  was actually a misrepresentation claim); *Collins v. Brown*, 129 A.D.2d 902, 903 (N.Y. Sup. Ct. 1987)

20  (holding that plaintiff's negligence claim, which was based on defendant's alleged misrepresentations

21  leading to plaintiff's arrest, was "in reality a claim for negligent misrepresentation").   Nevada follows

22  the definition in the Restatement (Second) of Torts § 552 for negligent misrepresentation, which

23  states:

24

25  [7]       The Court will likely apply Nevada law to this claim.   [*See supra* n. 5.]

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of [plaintiff] in their business transactions, is subject to liability for pecuniary loss caused to [plaintiff] by their justifiable reliance upon the information, if [defendant] fails to exercise reasonable care or competence in obtaining or communicating the information.

*Weinstein v. Mortgage Capital Assoc., Inc.*, 2011 WL 90085, *7 (D. Nev. Jan. 11, 2011) (citing *Scaffidi v. United Nissan*, 425 F. Supp. 2d 1159, 1169-70 (D. Nev. 2005)); *see also Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (stating elements of negligent misrepresentation claim). Negligent misrepresentation requires that the "plaintiff justifiably rel[y] on the false information." *Id.* Here, however, Plaintiffs do not allege that *they* relied on the false information – rather, they allege that the *police* relied on the false information. *See, e.g., Campbell v. City of San Antonio*, 43 F.3d 973, 982 n. 19 (5th Cir. 1995) (dismissing negligent misrepresentation claim where police, and not plaintiff, relied upon the defendant's false identification of plaintiff); *Collins*, 129 A.D.2d at 903 (dismissing negligent misrepresentation claim where it was the police and not plaintiff who relied upon the defendant's statements). As such, Plaintiffs cannot state a plausible claim for negligent misrepresentation.

## IV.  CONCLUSION.

For the aforementioned reasons, Plaintiffs' Complaint should be dismissed as to both Leapers and Continental.

DATED April 13, 2016.

CARBAJAL & MCNUTT, LLP


*/s/ Matt Wolf*
DANIEL R. MCNUTT
MATTHEW C. WOLF
625 South Eighth Street
Las Vegas, Nevada 89101

*Attorneys for Defendants Continental Incorporated, Inc., and Leapers, Inc.*

1

## CERTIFICATE OF MAILING

2          I HEREBY CERTIFY that pursuant to N.R.C.P. 5(b) on April 13, 2016, I caused service of

3    the foregoing **DEFENDANTS CONTINENTAL'S AND LEAPERS'S MOTION TO DISMISS**

4    **PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** by mailing a copy by

5    United States Postal Service, postage prepaid and/or via electronic mail through the United States

6    District Court's CM/ECF system to the following at their last known address and e-mail:

7    JEFFREY I. PITEGOFF (SBN 5458)
     MORRIS, SULLIVAN, LEMKUL & PITEGOFF, LLP
8    3770 Howard Hughes Parkway, Suite 170
     Las Vegas, Nevada 89169
9    Tel. (702) 405-8100 / Fax (702) 405-8101
     Attorney for Plaintiffs
10

11                              */s/ Lisa A. Heller*_____
12                              An Employee of Carbajal & McNutt LLP

13

14

15

16

17

18

19

20

21

22

23

24

25