UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ADRISH BANERJEE, an individual, and YAN HE, an individual, | Case No. 2:16-CV-669 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| CONTINENTAL INCORPORATED, INC., et al., | |
| Defendant(s). | |

Presently before the court is defendants Continental Incorporated, Inc.'s and Leapers, Inc.'s motion to dismiss. (ECF No. 24). Plaintiffs Adrish Banerjee and Yan He filed a response (ECF No. 37), to which defendants replied (ECF No. 38).

**I.   Facts**

Plaintiffs are online retailers of outdoor products, including rifle scopes bearing the "SNIPER" trademark. (ECF No. 20). Defendant Leapers, Inc. ("Leapers") manufactures rifle scopes, to which it claims intellectual property rights. (ECF No. 20). Defendant Continental Incorporated, Inc. ("Continental") is a private investigation firm. (ECF No. 20).

Suspecting that plaintiffs were infringing on its trademark, Leapers hired Continental to investigate the alleged infringement in 2014. (ECF No. 20). As part of the investigation, Continental made two purchase orders online for rifle scopes from plaintiffs in July and August of 2014. (ECF No. 20). Later, in early September 2014, Continental made another rifle scope purchase from plaintiffs at a Las Vegas gun show and expressed an interest in becoming plaintiffs' dealer in Indiana. (ECF No. 20).

**James C. Mahan**
**U.S. District Judge**

Subsequently, defendants met with a detective from the Vanderburgh County sheriff's office to examine the rifle scopes purchased from plaintiffs, during which the rifles were deemed counterfeits. (ECF No. 20). The Vanderburgh County superior court issued a warrant for the arrest of plaintiffs in December 2014, based on the detective's affidavit of probable cause. (ECF No. 20).

In February 2015, Las Vegas Metropolitan Police Department ("LVMPD") arrested plaintiffs at another Las Vegas area gun show pursuant to the arrest warrant. (ECF No. 20). Plaintiffs were held for approximately one week before being freed on bond. (ECF No. 20).

Later, in March 2015, the governor of Indiana issued an executive warrant, which empowered law enforcement to arrest and transport plaintiffs to Indiana. (ECF No. 20). In April 2015, LVMPD arrested plaintiffs at their home. (ECF No. 20). In May 2015, plaintiffs were transported to Indiana, wherein they were released on their own recognizance. (ECF No. 20). In August 2015, the Vanderburgh County district attorney dismissed all charges against plaintiffs. (ECF No. 20).

On February 24, 2016, plaintiffs filed the instant complaint in state court. (ECF No. 1). Defendants removed the case to this court on March 28, 2016. (ECF No. 1). On May 9, 2016, plaintiff filed their first amended complaint. (ECF No. 20).

In their first amended complaint, plaintiffs allege fourteen causes of action: (1) constitutional rights violation under 42 U.S.C. § 1983; (2) abuse of process; (3) false imprisonment; (4) defamation; (5) intentional infliction of emotional distress; (6) civil conspiracy; (7) negligence; (8) malicious prosecution under 42 U.S.C. § 1983; (9) malicious prosecution under common law; (10) Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1964; (11) RICO under NRS 207.470; (12) tortious placing in false light; (13) interference with prospective economic advantage; and (14) *respondeat superior* liability of Leapers. (ECF No. 20).

In the instant motion, defendants move to dismiss all fourteen (14) claims for failure to state a claim. (ECF No. 24). The court will address each in turn.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that

**James C. Mahan**
**U.S. District Judge**

- 3 -

are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

#### A. Constitutional violation under 42 U.S.C. § 1983

In the instant motion, defendants argue that plaintiffs failed to allege any conduct by defendants that would constitute state action to support a § 1983 claim. (ECF No. 24 at 4). In particular, defendants contend that plaintiffs merely alleged that defendants provided information about their whereabouts to federal/state actors. (ECF No. 24 at 6). Defendants maintain that providing information to government actors does not constitute state action even if the information provided was false and relied upon in making the decision to arrest plaintiffs. (ECF No. 24 at 6). The court agrees.

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

In certain circumstances, a plaintiff may bring a § 1983 action against a private party based on a violation of a constitutional right. *See, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (recognizing suit for a private party's violation of another's Fourth Amendment rights); *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir.), *as amended on denial of reh'g & reh'g en banc* (Aug. 23, 2002). Specifically, "[s]ection 1983 liability extends to a private party where the private party engaged in state action under color of law and thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States." *Brunette*, 294 F.3d at 1209.

"Whether a private party engaged in state action is a highly factual question." *Id.* Nevertheless, "private parties are not generally acting under color of state law." *Price v. State of*

James C. Mahan
U.S. District Judge

- 4 -

*Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991). Further, "'[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'" *Id*. at 708 (quoting *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)).

> A person may become a state actor by conspiring with a state official, or by engaging in joint activity with state officials. A person may also become a state actor by becoming so closely related to the State that the person's actions can be said to be those of the State itself. That might be found because the nexus is so close as to cause the relationship to be symbiotic. It might also be for such other reasons as performing public functions or being regulated to the point that the conduct in question is practically compelled by the State.

*Id.* at 708–09 (citations omitted).

Plaintiffs allege that defendants were state actors because they conspired or acted in concert with the Vanderburgh County prosecutor and sheriff's office under color of law. (ECF No. 20 at 8). Specifically, plaintiffs assert that defendants provided state agents with the false representations that formed the basis of the probable cause affidavit for plaintiffs' arrests. (ECF No. 20 at 8). Plaintiff maintains that these acts resulted in the violation of their constitutional right against unreasonable searches and seizures. (ECF No. 20 at 8–9).

"But the mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983." *Lockhead v. Weinstein*, 24 F. App'x 805, 806 (9th Cir. 2001) (citing *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1978)). "[A] relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy." *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001) (citing *United Steelworkers v. Phelps Dodge Corp*., 865 F.2d 1539, 1540 (9th Cir. 1989)).

The amended complaint merely alleges defendants knowingly provided state officials with false information, which alone is insufficient to support that defendants acted under color of law. Plaintiffs do not allege that defendants had any control over the state officials, nor do they allege that defendants had any involvement in their arrests or detention other than providing information. Further, plaintiffs do not allege any agreements existed between defendants and the state officials to support their allegation of conspiracy. While plaintiffs repeatedly assert that defendants

**James C. Mahan**
**U.S. District Judge**

- 5 -

conspired with state officials, they nonetheless failed to set forth sufficient facts to support their allegation that defendants were private parties acting under color of law.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

### B. Abuse of process

Plaintiffs allege that Leapers initiated the investigation that lead to their false arrest to harm plaintiffs and their business. (ECF No. 20 at 9–10).

In their motion, defendants contend plaintiffs fail to state a claim for abuse of process because they failed to allege that defendants engaged in improper use of process. (ECF No. 24 at 8–9). The court agrees.

An abuse of process claim requires two elements: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (quoting *Posadas v. City of Reno*, 851 P.2d 438, 444–45 (Nev. 1993)) (internal quotation marks omitted). Importantly, "[t]he utilized process must be judicial, as the tort protects the integrity of the court." *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev.), *reh'g denied* (Nov. 24, 2015), *reconsideration en banc denied* (Jan. 22, 2016).

Here, the amended complaint contains no allegations as to defendants' use of the legal process. While plaintiffs allege that they were charged, those charges were brought by the state, not defendants as they lack the authority to do so. Thus, plaintiffs have failed to state a claim for abuse of process against defendants.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

### C. False imprisonment

In their amended complaint, plaintiffs allege defendants provided the sheriff's office with false information and allegations that plaintiffs manufactured and distributed counterfeit rifle scopes. (ECF No. 20 at 4–5). Plaintiffs assert that they were unlawfully arrested and detained as a result of the falsely provided information. (ECF No. 20 at 12).

**James C. Mahan**
**U.S. District Judge**

- 6 -

In the instant motion, defendants argue that the false imprisonment claim fails because plaintiffs failed to allege that defendants themselves detained plaintiffs or actually participated in their arrests. (ECF No. 24 at 10). The court agrees.

Under Nevada law, an individual is liable for the tort of false imprisonment "if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it." *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (quoting Restatement (Second) of Torts § 35 (1965)).

Here, plaintiffs allege that they were arrested by LVMPD, held at the Las Vegas Detention Center, and transported to the custody of the Vanderburgh County sheriff's office. (ECF No. 20 at 7–8). The amended complaint contains no allegations that defendants intended to confine plaintiffs within boundaries fixed by the defendants. Thus, plaintiffs have failed to sufficiently state a false imprisonment claim against defendants to withstand dismissal.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

**D. Defamation**

Plaintiffs allege that defendants knowingly provided false statements regarding plaintiffs' alleged criminal conduct to the sheriff's office to intentionally harm their reputation and good name. (ECF No. 20 at 12). Plaintiffs claim that these "false and defamatory statements were published in the warrant of probable cause affidavit and ultimately caused . . . substantial emotional and reputational injury to [p]laintiffs and their business." (ECF No. 20 at 12).

A claim for defamation requires four elements: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).

A statement is defamatory when, "[u]nder any reasonable definition[,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt." *Las Vegas Sun v. Franklin*, 329 P.2d 867, 869 (Nev. 1958). "A defamatory statement is actionable only if it has been published." *M&R Investment*

James C. Mahan
U.S. District Judge

- 7 -

*Co. v. Mandarino*, 748 P.2d 488, 491 (Nev. 1987). "Publication . . . is the communication of the defamatory matter to some third person." *Jones v. Golden Spike Corp.*, 623 P.2d 970, 971 (Nev. 1981).

Here, plaintiffs allege that defendants knowingly provided false information to the sheriff's office. (ECF No. 20 at 12). Accordingly to plaintiffs, defendants claimed that plaintiffs manufactured and sold counterfeit rifle scopes and that the rifle scopes they purchased from plaintiffs were counterfeit. (ECF No. 20 at 4–5).

However, the amended complaint sets forth no facts in support of plaintiffs' allegation that defendants' statements were false. Rather, plaintiffs merely assert that "the statement that [p]laintiffs' products were 'counterfeit' was a false and misleading statement to the police" because defendants failed to disclose that Leapers allegedly owned no registered trademarks. (ECF No. 20 at 5).

Importantly, plaintiffs do not assert that their rifle scopes were in fact legitimate, nor do they dispute that the scopes were counterfeit. Thus, plaintiffs failed to state sufficient facts to support their allegation that defendants statements were false to withstand a motion to dismiss.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

### E. Intentional infliction of emotional distress

To establish a claim of intentional infliction of emotional distress ("IIED"), plaintiffs must plead and prove three elements: (1) defendants engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) plaintiffs suffered severe or extreme emotional distress; and (3) actual or proximate causation. *Posadas* v. *City of Reno*, 851 P.2d 438, 444 (Nev. 1993); *see also Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981).

Plaintiffs allege that defendants intended to inflict severe emotional distress on them by "knowingly and maliciously accus[ing] [p]laintiffs of crimes they did not commit," causing plaintiffs' arrests in front of colleagues and potential customers. (ECF No. 20 at 13). According to plaintiffs, they "experienced severe emotional distress, including substantial embarrassment, undeserved humiliation and fear" as a result of the false arrest orchestrated by defendants. (ECF No. 20 at 14).

In the instant motion, defendants argue that intentionally providing false information to law enforcement does not meet the stringent standard for "extreme and outrageous conduct." (ECF No. 24 at 12). Moreover, defendants contend that plaintiffs failed to allege facts to support that they suffered severe emotional distress. (ECF No. 24 at 13). The court agrees.

The court determines whether a defendant's conduct may be regarded as extreme and outrageous so as to permit recovery; but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability. *See Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009); *Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704–05 (D. Nev. 1986) (considering "totality of the circumstances" in determining whether conduct is extreme and outrageous).

Under Nevada law, "extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community"; however, this description does not encompass acts which are merely "inconsiderate" or "unkind." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). Liability does not extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46, cmt. d.

Nevada courts refer to the Restatement (Second) of Torts § 46 Torts for guidance in interpreting IIED claims. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980). Extreme and outrageous conduct may arise "from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." Restatement (Second) of Torts § 46 cmt. f. "[H]owever, . . . major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." *Id.* Extreme and outrageous conduct also "may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* cmt. e (stating as an example that police officers have been held liable for extreme abuse of their position).

Here, plaintiffs have failed to sufficient state a claim for IIED against defendants. Plaintiffs failed to state sufficient facts to support their allegations that defendants' statements were in fact false or claim that their rifle scopes were not counterfeit. Further, plaintiffs failed to state sufficient facts to support their allegation that they suffered severe emotional distress.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

**F. Civil conspiracy**

Plaintiffs allege that defendants acted in concert "to accomplish the unlawful objective of damaging [p]laintiffs' professional reputation, harming competitors and forcing [p]laintiffs out of business." (ECF No. 20 at 14). Plaintiffs further assert that defendants agreed to harm plaintiffs by "creative use" of Indiana statutes. (ECF No. 20 at 14).

In the instant motion, defendants argue that plaintiffs fail to state a claim for civil conspiracy as they failed to specifically allege an underlying tort. (ECF No. 24 at 15). The court agrees.

Civil conspiracy is a Nevada state law claim that "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol.-Generator Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998).

To state a claim for civil conspiracy, plaintiffs must allege two elements: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Further, in pleading a claim for civil conspiracy, plaintiffs must plead with particular specificity as to "the manner in which a defendant joined in the conspiracy and how he participated in it." *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984).

Here, plaintiffs have failed to sufficiently plead a claim for civil conspiracy with the requisite specificity. While plaintiffs allege that Leapers hired Continental to investigate plaintiffs' infringement, they have failed to specifically allege an underlying tort and that defendants had an agreement to commit that tort.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

**James C. Mahan**
**U.S. District Judge**

- 10 -

**G. Negligence against defendant Continental**

Plaintiffs allege that defendant Continental had a duty to exercise reasonable care in reporting solely true and accurate information to law enforcement, that Continental breached this duty by providing "inaccurate and/or invalid information" to law enforcement, and that defendants negligently caused injuries to plaintiffs. (ECF No. 20 at 15).

To prevail on a claim for negligence, a plaintiff must generally show four elements: (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause of plaintiff's injury; and (4) plaintiff suffered damages. *Scialabba v. Brandise Constr. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996).

"Whether a defendant owes a plaintiff a duty of care is a question of law." *Harrington v. Syufy Enters.*, 931 P.2d 1378, 1381 (Nev. 1997). "A duty in tort owing from a defendant to a plaintiff can be created by law, by a defendant's assumption of that duty, or by a preexisting relationship between the plaintiff and the defendant." *Jacobsen v. Marin Gen. Hosp.*, 192 F.3d 881, 885 (9th Cir. 1999).

Here, plaintiffs have failed to sufficiently allege that defendants owed plaintiffs a duty of care. In particular, plaintiffs failed to allege that Continental assumed a duty created by law or that it had a preexisting relationship with plaintiffs.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

**H. Malicious prosecution under 42 U.S.C. § 1983 & under common law**

To plead a claim for malicious prosecution under Nevada law, plaintiffs must allege facts from which the court may infer four elements: (1) defendants lacked probable cause to initiate the prosecution, (2) malice, (3) the prior criminal proceedings were terminated in their favor, and (4) plaintiffs suffered damages. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.), *as amended on denial of reh'g & reh'g en banc* (Dec. 29, 1995) (internal citations omitted).

A claim for malicious prosecution under § 1983 requires plaintiffs to allege these elements plus the additional element that defendants prosecuted them "for the purpose of denying [them] equal protection or another specific constitutional right." *LaMantia v. Redisi*, 38 P.3d 877, 888 (Nev. 2002) (internal citation omitted).

James C. Mahan
U.S. District Judge

- 11 -

"Malicious prosecution, by itself, does not constitute a due process violation." *Freeman*, 68 F.3d at 1189. Thus, to prevail, plaintiffs must show that defendants prosecuted them with malice and without probable cause, and that they did so for the purpose of denying them their equal protection or other specific constitutional right. *See id.*

Here, plaintiffs' claims for malicious prosecution under § 1983 and common law fail for several reasons. While plaintiffs allege that the charges against them were dismissed, the mere fact that a prosecution was unsuccessful does not mean it was not supported by probable cause. *See id.* Plaintiffs do not allege that probable cause was lacking, but merely that defendants knowingly provided false information to the sheriff's office, which formed the basis of the probable cause affidavit. Plaintiffs do not allege that the probable cause affidavit was based solely on defendants' allegedly false information or that detectives did not conduct any individual investigation. Further, defendants did not prosecute plaintiffs, nor did they have the authority to do so.

Accordingly, defendants' motion to dismiss will be granted as to plaintiffs' malicious prosecution claims.

### I.  RICO under 18 U.S.C. § 1964

Plaintiffs allege that at Leapers direction, Continental sent letters to plaintiffs' customers, on at least two occasions, demanding payment and threatening criminal prosecution regarding their sales of plaintiffs' merchandise. (ECF No. 20 at 18). According to the amended complaint, these letters contained fraudulent statements and Continental sent the letters interstate through the U.S. mail so as to constitute mail fraud pursuant to 18 U.S.C. § 1341. (ECF No. 20 at 18). Plaintiff asserts that the predicate acts have injured their business and property, including loss of customers and trade. (ECF No. 20 at 18).

In the instant motion, defendants argue that the federal RICO claim fails for failure to sufficiently plead a racketeering activity. (ECF No. 24 at 18). In particular, defendants contend that plaintiffs failed to allege the identities of the sender and recipients of the letters, the dates on which the letters were sent, and the substance of the letters. (ECF No. 24 at 19). The court agrees.

Case 2:16-cv-00669-JCM-VCF   Document 47   Filed 10/11/16   Page 13 of 16

To plead a federal civil RICO claim, a plaintiff must demonstrate five elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *see also* 18 U.S.C. § 1964(c).

"Racketeering activity" includes a variety of specified federal crimes, including mail and wire fraud. 18 U.S.C. § 1961(1)(B). To state the elements of wire or mail fraud, plaintiffs must allege three elements: (1) defendants formed a scheme or artifice to defraud; (2) defendants used the mails or wires in furtherance of the scheme; and (3) defendants acted with the specific intent to deceive or defraud. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004); *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003).

Further, because RICO claims involve underlying fraudulent acts, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Thus, to sufficiently plead their federal RICO claim, plaintiffs must specify the time, place, and content of the alleged underlying fraudulent acts, as well as the parties involved and their individual participation. *Edwards*, 356 F.3d at 1066; s*ee also Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 541 (9th Cir. 1989) (racketeering allegations under § 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in the scheme).

Here, plaintiffs have failed to state facts as to the time, place, and content of the letters. Further, plaintiffs have failed to specify the recipients of the letters. Furthermore, plaintiffs have failed to allege facts sufficient to support their claim that they lost customers as a result.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

**J. RICO under NRS 207.470**

"Nevada courts have interpreted the state RICO statute consistently with the provisions of federal RICO." *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994) (citing *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 298 n.2 (Nev.) ("Nevada's racketeering statutes ... are patterned after

U.S. District Judge

- 13 -

the federal [RICO] statutes"), *cert. denied*, 510 U.S. 857 (1993)). Thus, the court adopts its analysis of the federal RICO claim.

Accordingly, defendants' motion to dismiss will be granted as to this claim as well.

**K. Tortious placing in false light**

In order to prevail on this claim, plaintiffs must demonstrate three elements: (1) defendants gave publicity to a matter concerning plaintiffs that placed them before the public in a false light; (2) that the false light would be highly offensive to a reasonable person; and (3) defendants had knowledge of, or acted in recklessly disregard as to, the falsity of the publicized matter and the false light in which plaintiffs would be placed. *See, e.g.*, *Barket v. Clarke*, No. 2:12-CV-393 JCM GWF, 2012 WL 2499359, at *5 (D. Nev. June 26, 2012).

Plaintiffs' false light invasion of privacy claim is premised on their public arrest at the Las Vegas gun show, which defendants allegedly caused, and the "extortionate letters" Continental allegedly sent to their customers. (ECF No. 20 at 20). Plaintiffs assert that defendants' conduct placed them in a false light to third parties, causing loss of business income and severe emotional distress. (ECF No. 20 at 20).

The Supreme Court of Nevada expressly recognized false light invasion of privacy as a valid and separate cause of action in 2014. *See Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 141 (Nev.), *reh'g denied* (Nov. 25, 2014), *petition for cert. filed* (Mar. 25, 2015) ("[W]e, like the majority of courts, conclude that a false light cause of action is necessary to fully protect privacy interests, and we now officially recognize false light invasion of privacy as a valid cause of action in connection with the other three privacy causes of action that this court has adopted.").

The court clarified that, under Nevada law, defamation law seeks to protect an objective interest in one's reputation—either economic, political, or personal—in the outside world. *Id.* (citations omitted). Conversely, false light invasion of privacy protects one's subjective interest in freedom from injury to the person's right to be left alone. *Id.* (citations omitted). For example, situations such as being falsely portrayed as a victim of a crime, such as sexual assault, or being falsely identified as having a serious illness, or being portrayed as destitute, may place a person in a harmful false light without rising to the level of defamation. *Id.* (citations omitted).

James C. Mahan
U.S. District Judge

- 14 -

In Nevada "the injury in privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation." *Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002) (citation omitted). Like defamation, false light requires actual malice. *Id.* However, courts place less emphasis on public reputation in the false light tort than in defamation. *Id.* The thrust of a false light action is the subjective "privacy" of the subject. *Id.* False light also requires an implicit false statement of objective fact. *Id.*

As previously discussed in the defamation analysis, plaintiffs have failed to allege that their rifle scopes were legitimate and not counterfeit. Thus, plaintiffs failed to state sufficient facts to support their allegation that defendants statements were false to withstand a motion to dismiss.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

**L.  Wrongful interference with prospective economic advantage**

Plaintiffs allege that defendants were aware of plaintiffs' business relations with certain customers. (ECF No. 20 at 20). Further, plaintiffs allege that defendants were aware that plaintiffs' potential and existing customers would be at the Las Vegas gun show. (ECF No. 20 at 20). Plaintiffs thus assert that defendants intended to interfere with their potential economic advantages with those customers. (ECF No. 20 at 20).

To establish a claim of wrongful interference with a prospective economic advantage, a plaintiff must show five elements:

> 1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing the relationship; 4) the absence of privilege or justification by the defendant; and, 5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225–26 (Nev. 1987).

Here, plaintiffs have failed to sufficiently state a claim for wrongful interference with prospective economic advantages. Specifically, plaintiffs have failed to allege that defendants intended to harm plaintiffs by preventing the prospective relationship or that defendants lacked a justification. Further, plaintiffs have failed to allege actual harm as a result of defendants' conduct.

Accordingly, defendants' motion to dismiss will be granted as to this claim.

. . .

**James C. Mahan**
**U.S. District Judge**

- 15 -

### M. *Respondeat superior* liability of Leapers

"[R]espondeat superior liability attaches only when the employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980). Under *respondeat superior*, an employer may be held liable for both negligent and intentional acts of employees. *See, e.g., Busch v. Flangas*, 837 P.2d 438, 440 (Nev. 1992) (negligence); *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1180 (Nev. 1996) (intentional tort); *see also Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1106 (D. Nev. 2001).

However, *respondeat superior* is a theory of attributing liability, and is not itself a stand-alone claim for relief. Additionally, § 1983 does not permit *respondeat superior* liability. *See Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) (rejecting the concept of *respondeat superior* liability in the § 1983 context and requiring individual liability for the constitutional violation).

As plaintiffs failed to state a claim for negligence or any intentional tort against defendants, defendants' motion to dismiss will be granted as to this claim.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Continental Incorporated, Inc.'s and Leapers, Inc.'s motion to dismiss (ECF No. 24) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' amended complaint (ECF No. 20) be, and the same hereby is, DISMISSED WITHOUT PREJUDICE.

DATED October 11, 2016.

UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 16 -